IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SANTIAGO FIGUEROA and SANTIAGO ARREDONDO TAPIA, individually and doing business as SANTIAGOS MEXICAN RESTAURANT, <br><br> Defendant. | Case No.: 1:11-cv-00678-AWI-JLT <br><br> FINDINGS AND RECOMMENDATION DISMISSING DEFENDANT SANTIAGO FIGUEROA <br><br> (Doc. 13) <br><br> FINDINGS AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Doc. 12) |

J & J Sports Productions, Inc. ("Plaintiff") seeks the entry of default judgment against Defendants Santiago Figueroa and Santiago Arredondo Tapia, individually and doing business as Santiagos Mexican Restaurant, also known as Santiagos Mexican & Seafood Restaurant. (Doc. 12). Defendants have not opposed this motion.

Following the filing of the motion, Plaintiff filed a notice of voluntary dismissal to dismiss defendant Santiago Figueroa on September 7, 2011. (Doc. 13). Therefore, the Court recommends Santiago Figueroa be **DISMISSED**. For the following reasons, the Court recommends Plaintiff's motion for default judgment as to Santiago Arredondo Tapia be **GRANTED IN PART AND DENIED IN PART**.

///

1

## I. Procedural History

On April 28, 2011, Plaintiff filed its complaint against Santiago Arredondo Tapia ("Defendant"), alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, et seq.; and the California Business and Professions Code § 17200, *et seq*. In addition, Plaintiff alleges Defendant is liable for wrongful conversion of property, arising under California State law. (Doc. 1 at 3-7). Plaintiff claims to have possessed the exclusive rights to the nationwide commercial distribution of "The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight Program" ("the Program"), televised on May 1, 2010. *Id.* at 3. Plaintiff's claims are based upon an alleged unlawful interception and broadcast of the Program by Defendant at his establishment.

Defendant was properly served with the complaint on July 11, 2011 (Doc. 5), and failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, and pursuant to Fed. R. Civ. P. 55(a), default was entered against Defendant on August 17, 2011. (Doc. 10). On August 26, 2011, Plaintiff filed the motion for default judgment now before the Court. (Doc. 12). Despite receiving service of the complaint and notice of this motion for default judgment, Defendant failed to participate in this action.

## II. Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d

1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III.  Plaintiff's Factual Allegations

Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 3-4; Doc. 12-4, Exh. 1). According to Mr. Joseph Gagliardi, president of J & J Sports Productions, sales of the sublicensing agreements for the Program were made by G & G Closed Circuit Events. (Doc. 12-4 at 2, n. 2). In addition, Mr. Gagliardi reported the company endeavors to "police [its] signals for the purpose of identifying and prosecuting establishments which pirate [the] programming," and "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates." (*Id.* at 2).

Plaintiff asserts Defendant is "an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Santiagos Mexican Restaurant a/k/a Santiagos Mexican & Seafood Restaurant . . ." (Doc. 1 at 3). Plaintiff alleges Defendant engaged in an act of signal piracy by broadcasting the Program in the establishment without purchasing a proper sublicense. *Id.* at 4. For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and the California Business and Professions Code. *Id.* at 3-8. However, in its application for default judgment, Plaintiff requested damages only for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 12). Therefore, the Court will address only these claims.

///

3

**IV.  Application of *Eitel* Factors**

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

A.  Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177.  In general, where default has been entered against a defendant, a plaintiff has no other alternative by which to recover damages. *Id.; J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010).  Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

B.  Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010).  The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3.  In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a).  Thus, the Communications Act claim requires Plaintiff to prove that it was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A).  A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."  47 U.S.C. § 605(d)(6).

In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 3). The rate sheet for the Program, attached as Exhibit 2 to the affidavit of Mr. Gagliardi, president of J & J Sports Productions, states:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G & G Closed Circuit Events, Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 12-4, Ex. 2). Individuals with questions regarding viewing packages are directed to contact Art Gallegos, Vice President of G & G Closed Circuit Events. *Id.* Mr. Gagliardi explained:

> Our firm utilized a company called G & G Closed Circuit Events, LLC . . . to sell closed-circuit licenses to commercial locations throughout the United States. G & G had an exclusive agreement in that regard and for that reason, it was G & G (rather than our company) that prepared the Rate Card evidencing commercial licensing fees applicable to this particular event.

(Doc. 12-4 at 2, n.2). Consequently, the Court finds Plaintiff was the party aggrieved under § 605.

In addition to establishing that it was a "person aggrieved," Plaintiff must show Defendant intercepted a wire or radio program and published it without Plaintiff's permission. 47 U.S.C. § 605(a). Plaintiff acknowledges that it is unable to "determine the precise means that the Defendant used to receive the Program," but asserts "Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendant[] used . . ." (Doc. 12-1 at 3). Similarly, in *Hernandez*, Plaintiff was unable to identify the nature of the transmission.[1] As noted by the Court, "Plaintiff's inability to allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *10. Regardless of Plaintiff's inability to isolate the means of the signal transmission, the evidence presented demonstrates that the Program was broadcast in Defendant's establishment though Defendant did not purchase a license for the broadcast. (Doc. 12-3 at 2; Doc. 12-4 at 2). Indeed, Plaintiff's investigator witnessed the match between Daniel Ponce de Leon and Cornelius Lock, an under-card fight included in the Program, on a television set in Defendant's establishment. *Id.*

---

[1] Plaintiff in the matter now before the Court was the plaintiff in *Hernandez*, and represented by the same attorney, Thomas P. Riley. *See* No. 2:09-cv-3389 GEB KJN.

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff has shown that Defendant engaged in signal piracy by broadcasting the program without a sublicense. The rate sheet attached to the affidavit of Mr. Gagliardi establishes a sublicense would have cost $2,200 for an establishment with the capacity of up to 50 persons. (Doc. 12-4, Exh. 2). Plaintiff's investigator estimated the establishment had a capacity of 40 people. (Doc. 12-3 at 2). Consequently, Plaintiff has established damages in the amount of $2,200, and has stated a claim for conversion against Defendants.

C.   Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605. This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including

enhanced damages. (Doc. 12-1 at 3). In addition, Plaintiff seeks compensatory and punitive damages for Defendant's tortuous conversion of Plaintiff's property. *Id.* at 15. Plaintiff asserts that Defendant would have been required to pay $2,200 to broadcast the program at their establishment, but Plaintiff asserts nominal damages have proven insufficient to combat piracy, and Defendant should be required to pay the statutory maximum. *Id.* at 14-18. Thus, Plaintiff seems to concede that amount of damages requested is not proportional to Defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against entry of default judgment). However, as discussed below, the Court declines to enter judgment in the amount requested. Therefore, the factor does not weigh against Plaintiff.

D.   Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant has not made any effort to challenge the Complaint or otherwise appear in this case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Therefore, this factor does not weigh against entry of default judgment.

E.   Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel,* 782 F.2d at 1472. Here, Defendant was served with the Summons and Complaint, as well as with a copy of Plaintiff's motion for default judgment. *See* Doc. 12-1 at 18.

7

1  Given these circumstances, it is unlikely that Defendant's failure to answer, and the resulting default
2  entered by the Clerk of Court, were the result of excusable neglect. *See Shanghai Automation*
3  *Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable
4  neglect because the defendants "were properly served with the Complaint, the notice of entry of
5  default, as well as the papers in support of the instant motion"). As a result, this factor does not
6  weigh against default judgment.

   F.  Policy disfavoring default judgment

   As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against Plaintiff.

**V.  Damages**

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiffs and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions." (Doc. 12-1 at 4-5). As noted, Plaintiff requests the statutory maximum, including enhanced damages for violation of the Communications Act, and damages for the tort of conversion, bringing the total requested to $112,200.

   A.  Statutory Damages

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii).

Plaintiff's investigator estimated the capacity at Santiago's Mexican Restaurant was 40 people, and headcounts revealed between 10 and 14 people were present. (Doc. 12-3 at 2). No

cover charge was required for entry. *Id.* The program was shown on a single 20" television "over [the] bar area." *Id.* Plaintiff provided no evidence of advertising, that a premium was charged for food or drinks, that a cover charge was imposed or that Defendant engaged in signal piracy on previous occasions. *Id*.

Despite these facts, Plaintiff argues that it is entitled to the maximum statutory damages of $10,000 for Defendants' wrongful interception and broadcast of the Program. In support, Plaintiff cites several cases from this district awarding the statutory maximum: *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, 2009 WL 1845090 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under §605 where there were two televisions, the capacity was fifty people, and there were between 23 and 29 patrons); *J & J Sports Productions v. Esquivel*, 2008 U.S. Dist. LEXIS 92140, 2008 WL 4657741 (E.D. Cal. Oct. 20, 2008) (awarding $10,000 under both §553 and §605, plus enhanced damages where the capacity was 75 people, there were 35 individuals present, and the program was shown on a single 27" television); *J & J Sports Productions, Inc. v. Flores*, 2009 U.S. Dist. LEXIS 54676, 2009 WL 1860520 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under §605 and an additional $10,000 under §553 where there were between 33 and 35 people present and there was no cover charge); *J & J Sports Productions, Inc. v. George*, 2008 U.S. Dist. LEXIS 85770, 2008 WL 4224616 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 under both §553 and §605 where the establishment had a capacity of 30 people and 20 were present, there was a single television and no entry fee, but not stating whether the award included enhanced damages).[2]

Though Plaintiff asserts these cases are comparable to the matter now pending before the Court, several factors distinguish the matter. For example, each of the above establishments had approximately twice as many patrons as Santiago's Mexican Restaurant, where headcounts revealed

---

[2] In *Flores*, which awarded damages under both §553 and §605, it is not clear whether the $10,000 award was for statutory damages alone or included enhanced damages. *See Flores*, 2009 U.S. Dist. LEXIS 54676, at *5. Likewise, as acknowledged by Plaintiff, in both *Esquivel* and *George*, the Court awarded damages under both §553 and §605 without analyzing the propriety of cumulative damages for violations of both statutes.

Since the decisions in *Flores* and *George*, many courts have determined a plaintiff should not be permitted to recover under both § 553 and § 605, though the Ninth Circuit has yet to address this question. Notably, this Court observed, "Although some courts, including some in the Eastern District of California, have multiplied awards when a defendant is liable under both provisions, the majority of courts in the Ninth Circuit and elsewhere have imposed damages only pursuant to one of the two sections." *Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010). Regardless, here, Plaintiff seeks damages under only §605.

between 10 and 14 individuals were present. Further, in *Tidmarsh*, the investigator rated the establishment as "excellent" and "noted it contained two pool tables and various video games at the back [with] a large television on one side of the establishment and a second, much smaller television on the opposite side." *Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, at *9. In contrast, here the investigator described the establishment as "good"" with table seating [and] small bar area." (Doc. 12-3 at 2).

The Ninth Circuit observed, "The range in the statutory award might allow for a sanction that deters but does not destroy." *Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009). Recently, courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., Sorondo*, 2011 U.S. Dist. LEXIS 85770 (awarding $3,800 under §605 and $1,600 for conversion, for a total of $5,400 that equaled "three times Plaintiff's actual damages"); *Joe Hand Promotions v. Brown*, 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *Integrated Sports Media, Inc. v. Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (E.D. Cal. Aug. 11, 2010) (awarding $1,000 in statutory damages where the capacity of the restaurant was forty, the number present ranged from 12 to 20, no admission fee was charged, and the program was displayed on a single television). Here, the establishment was fairly small, there was no evidence Defendant advertised the broadcast, there was no cover charge imposed, and few patrons were present. Consequently, the Court finds $4,000 is an appropriate award in statutory damages.

B.  Enhanced Damages

Asserting a right to enhanced damages, Plaintiff argues, "the fact that such an interception is done for commercial advantage is . . . firmly decided" and that a court may infer willfulness from a defendant's failure to appear and defend. (Doc. 12-1 at 10-11). Supporting this, Plaintiff cites to

several cases from district courts in the Second Circuit and a district court from the Fifth Circuit.[3] However, in so arguing, Plaintiff ignores requirement that allegations regarding the amount of damages must be proven. *See Pope*, 323 U.S. at 22; *Geddes*, 559 F.2d at 560. "The mere assertion that Defendant acted willfully is insufficient to justify enhanced damages." *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10 (E.D. Cal. Sept. 6, 2011) (quoting *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)). A court may consider many factors to determine whether an act was "committed willfully" and whether enhanced damages should be awarded. Previously, the Court explained:

> To establish significant commercial advantage or private financial gain, a plaintiff must allege something more than the mere airing of a pirated program, such as engaging in promotional advertising, imposing a cover charge, or charging a premium for food or drinks. The size of the audience, the establishment, or both is also relevant to the measure of enhanced damages, as is whether the customers are present primarily to watch the broadcast or have come for another purpose while the program is being aired.

*Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *10-11 (internal quotation marks omitted) (citing *Backman*, 102 F.Supp.2d at 1198). Many courts consider the number and size of televisions upon which the pirated program was broadcast. *Id.* Finally, damages may be enhanced for repeated offenses. *See, e.g., Joe Hand Promotions v. Gamino*, 2011 U.S. Dist. LEXIS 1960, at *9 (E.D. Cal. Jan. 10, 2011); *J & J Sports Productions, Inc. v. Ferreyra*, 2010 U.S. Dist. LEXIS 21140, at *11-12 (E.D. Cal. Mar. 9, 2010); *Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *8.

Absent evidence of commercial advantage or financial gain, district courts have refused to award enhanced damages where the defendants were not repeat offenders. *See, e.g., Backman*, 102 F.Supp.2d at 1198-99 ("An establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers"); *Naranjo*, 2010 U.S. Dist. LEXIS 81264; *Garden City Boxing Club, Inc. v. Nguyen*, 2005 U.S. Dist. LEXIS 29886, at *12 (E.D.

---

[3] Notably, even in the cases cited by Plaintiff, the courts did not award the statutory maximum that is requested here. *See Haddock*, 2009 U.S. Dist. LEXIS 63048, at *5 (recommending an award of $25,000 total under § 605); *Kingsvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, 1185 (D. Colo. 2008) (awarding $15,000 in enhanced damages after finding interception was willful); *Garden City Boxing Club, Inc v. Frezza*, 476 F.Supp.32d 135, 139-140 (D. Conn. 2007) (awarding $10,000 in enhanced damages because the defendant acted willfully).

Cal. Nov. 28, 2005) (awarding the statutory minimum and finding "no evidence of significant commercial advantage or private financial gain" where the defendant did not advertise or charge admission, and ten customers were present); *J & J Sports Productions v. Miranda*, 2009 U.S. Dist. LEXIS 112415, at *3-4 (N.D. Cal. Nov. 16, 2009) (finding "an enhanced damage award is not warranted under the statute" where there was "no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation, or that it actually profited from the violation"); *J & J Sports Productions v. Hernandezsilva*, 2010 U.S. Dist. LEXIS 96891 (S.D. Cal. Sept. 15, 2010) (declining a request for enhanced damages where "Plaintiff does not allege repeated violations, does not claim that Defendants advertised the event, and offers only conclusory statements in support of its contentions that Defendants realized financial gain from showing the program"). Likewise, here the investigator reported no cover charge was required, and Plaintiff has not shown Defendant was a repeat offender or advertised the Program broadcast to make a profit. Further, as discussed above, the establishment was small with few patrons present, and it is not clear whether all patrons were in the bar area where the television was located. Consequently, Plaintiff has not shown Defendant acted "for the purposes of direct or indirect commercial advantage or private financial gain" as required for enhanced damages.

### C. Damages for Conversion

Plaintiff requests $2,200 for damages for the tort of conversion. (Doc. 23-1 at 14-15). The investigator estimated the capacity for Santiago's Mexican Restaurant was forty individuals. (Doc. 12-3 at 2). The rate card attached to the declaration of Mr. Gagliardi indicates that an establishment with a capacity up to fifty patrons were charged $2,200 for a sublicense from G & G Closed Circuit Events. (Doc. 12-4, Ex. 2). Therefore, Defendant would have been required to pay $2,200 for a sublicense, and Plaintiff is entitled to this amount in damages. *See, e.g., Naranjo*, 2010 U.S. Dist. LEXIS 81264, at *6 (calculating damages for conversion based upon the amount defendants would have been required to pay for a broadcasting sublicense); *Brown*, 2010 U.S. Dist LEXIS 119435, at *16-17; *but see Ferreyra*, 2008 U.S. Dist LEXIS 75840, at *2-3 ("Inasmuch as plaintiff seeks statutory damages rather than actual damages, plaintiff's request for damages for conversion should be denied"); *J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal.

Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200) ; *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (declining conversion damages statutory damages "sufficiently compensate[d]" the plaintiff). Therefore, the Court recommends $2,200 in damages for the tort of conversion.

## VI.   Attorney Fees and Costs

In Plaintiff's prayer for relief in the complaint and the motion for default judgment, Plaintiff seeks the award of costs and attorneys fees pursuant to 47 U.S.C. § 605.  (*See* Doc. 12 at 3). However, no evidence of costs or attorney fees incurred was submitted to the Court in connection with the pending application.  The Local Rules provide, in relevant part,

> All motions for awards of attorneys' fees pursuant to statute shall, at a minimum, include an affidavit showing: (1) that the moving party was a prevailing party, in whole or in part, in the subject action...; (2) that the moving party is eligible to receive an award of attorneys' fees, and the basis of such eligibility; (3) the amount of attorneys' fees sought; (4) the information pertaining to each of the criteria [for awards] . . . ; and (5) such other matters as are required under the statute under which the fee award is claimed.

LR 293(b). Because Plaintiff failed to provide an affidavit or evidence of costs and fees, the request for attorneys fees pursuant to 47 U.S.C. § 605 is procedurally defective. Therefore, the Court will not recommend the award of attorney fees and costs.

## VII.   Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092.  However, the damages requested are disproportionate to Defendant's actions.  Importantly, when determining the amount of damages to be awarded for signal piracy, "the principle of proportionality governs." *Backman*, 102 F.Supp.2d at 1198.  Under this principle, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Id.*   As observed in *Streshly*, Defendant "may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray [him] as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139 (S.D. Cal. 2009).

Considering the size of the television on which the Program was broadcast, the size of the establishment, and the number of patrons present, the Court declines to recommend that Plaintiff's request for an award of the statutory maximum be ordered. Further, enhanced damages are not warranted because there is no evidence that Defendant engaged in signal piracy on prior occasions, no entry fee was charged, and there is no evidence of any financial gain or commercial advantage gained by Defendant's broadcast of the program.

Accordingly, the Court recommends the award of $4,000 for the violation of §605, and $2,200 for the tort of conversion, for a total award of $6,200. This amount both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy by Defendant. *See Lake Alice Bar*, 168 F.3d at 350 (observing that a lower statutory award may deter while not destroying a business).

Accordingly, the Court **RECOMMENDS**:

1. Pursuant to Plaintiff's notice of voluntary dismissal (Doc. 13), defendant Santiago Figueroa be **DISMISSED**; and

2. Plaintiff's application for default judgment (Doc. 12) be **GRANTED IN PART AND DENIED IN PART** as follows:

   A. Plaintiff's request for statutory damages for the violation of the Communications Act be **GRANTED** in the amount of $4,000;

   B. Plaintiff's request for enhanced damages be **DENIED**;

   C. Plaintiff's request for damages for the tort of conversion be **GRANTED** in the amount of $2,200; and

   D. Plaintiff's request for attorney fees and costs be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 30, 2011**                              **/s/ Jennifer L. Thurston**
                                                                            UNITED STATES MAGISTRATE JUDGE